UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
DIVISION OF PHOENIX


CASE NO.: 2:22-cv-00572-JAT--ESW


GABRIEL J. BASSFORD, an individual,

                            Plaintiff,

v.

CITY OF MESA, a municipal corporation;
MESA POLICE DEPARTMENT, a municipal
corporation; JOHN DOE, in his individual and
official capacity; LAUREN RAMIREZ, in her
official and individual capacity; KYLER
NEWBY. in his individual and official capacity;
JOSEPH RANGEL, in his individual and official
capacity; PHILLIP CLARK, in his individual
and official capacity; MICHAEL DESTEFINO,
in his individual and official capacity; JOSEPH
ADAMS, in his individual and official capacity;
and  JOHN DRECHSLER, an individual,

                          Defendants.

_____/

```
┌─────────────────────────────────────┐
│ ✓ FILED          ___ LODGED         │
│ ___ RECEIVED     ___ COPY           │
│                                     │
│        MAY 2 5 2022                 │
│                                     │
│   CLERK U S DISTRICT COURT          │
│   DISTRICT OF ARIZONA               │
│ BY_____ DEPUTY          │
└─────────────────────────────────────┘
```

## FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

        The Plaintiff, Gabriel Bassford, in his proper person, hereby serves his suit against

the Defendants, City of Mesa, Mesa Police Department, John Doe, Lauren Ramirez, Kyler

Newby, Joseph Rangel, Phillip Clark, Michael Destefino, Joseph Adams, John Drechsler and

alleges as follows:

## Introduction

1.      On the night of October 9, 2021, the Plaintiff Gabriel J. Bassford (hereinafter "Mr. Bassford"), lawfully walked onto the property of Circle K, a business located at 1145 W. Main Street, during business hours and engaged his First Amendment right to film public officials.

2.      While filming the City of Mesa police officers' public acts that were being committed in plain view, Mr. Bassford was deprived of his right to film these public officials by Mesa PD officer Kyler Newby unlawfully placing him under arrest merely because he was exercising this right.

3.      Specifically, Mesa PD officers Kyler Newby, Joseph Rangel, and Phillip Clark, conspired with John Drechsler, a security guard who works at the Circle K in this matter, to deliberately fabricate a trespass in the third degree, under ARS 13-1502(1), by arresting Mr. Bassford without first providing him with a reasonable request to leave the incident location.

4.      As such, Mr. Bassford was falsely imprisoned at the Mesa Police Department for sixteen hours by officers Newby, Rangel, Clark, and the supervising officer Joseph Adams, who was briefed of the incident by officer Newby, acting in concert to transport him to the Mesa holding facility.

5.      Because of officers Newby, Rangel, Clark, Adam, and security guard Drechsler's actions, Mr. Bassford was deprived of his First Amendment right to film public officials, his Fourth Amendment right to warranted search and seizure, his Fifth Amendment right to remain silent, his Sixth Amendment right to have counsel present before answering questions; and his Fourteenth Amendment right to due process and equal protection of the laws.

6.      Moreover, because Mesa Police Department Policy Manual 2.4.10 is the direct cause for Mr. Bassford being deprived of his civil rights to lawful seizure and search, the Mesa Police Department is liable to Mr. Bassford for damages based upon its unlawful policy.

7.      Thereafter, Mr. Bassford alleges that City of Mesa, by and through its employees John Doe and Lauren Ramirez of the City prosecutor's office, initiated a malicious prosecution for trespass in the third degree, because the probable cause statement lacked sufficient evidence to pursue charges.

8.      Consequently, the Defendants actions have caused Mr. Bassford to (1) suffer financial loss; (2) emotional and mental suffering that require continuing care; and (3) the likely possibility that future employers discriminate against him for employment based upon his background check, which has not been tarnished by the Mesa PD's false charge of trespassing.

## Jurisdiction and Venue

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the claims which arise are under the laws of the United States, and this court has supplemental jurisdiction of the additional claims, pursuant to 28 U.S.C. § 1367(a), as they all are so related to the federal questions that they form part of the same case or controversy.

10.     10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because at least one Defendant and the Plaintiff reside in this District and the events or omissions giving rise to the Plaintiff's claims occurred in this District. In this regard, the deprivation of civil rights that were intended to occur in the District of Arizona, and they did occur in the District of Arizona.

## The Parties

3

11.     Plaintiff, Gabriel J. Bassford, a United States citizen, is a private citizen who is *sui juris* and he resides in the State of Arizona.

12.     Defendant, City of Mesa (hereinafter the "the City"), is a municipal corporation located in the State of Arizona. The City's acts and omissions, as identified in this lawsuit, arise out of its conduct by its Prosecutor's Office and Police Department in unlawful actions taken against Mr. Bassford.

13.     Defendant, Mesa Police Department (hereinafter "Mesa PD"), is a municipal corporation located in the State of Arizona. The Mesa Police Department is an agency of the City. So, The Mesa PD's acts and omissions, as identified in this lawsuit, arise out of its conduct by its officers employed at its Police Department in unlawful actions taken against Mr. Bassford.

14.     Defendant, John Doe (hereinafter ("JD"), is an unknown individual believed to reside in the State of Arizona and is *sui juris*. JD's acts and omissions, as identified in this lawsuit, arise out of his conduct for the City Prosecutor's office in initiating a malicious prosecution against Mr. Bassford.

15.     Defendant, Lauren Ramirez (hereinafter "Ramirez"), is an individual that resides in the State of Arizona and is *sui juris*. Ramirez's acts and omissions, as identified in this lawsuit, arise out of her conduct for the City Prosecutor's office in the malicious prosecution taken against Mr. Bassford.

16.     Defendant, Kyler Newby (hereinafter "officer Newby"), is an individual that resides in the State of Arizona and is *sui juris*. Officer Newby's act and omissions, as identified in this lawsuit, arise out of his conduct for the City's Police Department in initiating the unlawful arrest and imprisonment of Mr. Bassford.

4

17.     Defendant, Joseph Rangel (hereinafter "officer Rangel"), is an individual that resides in the State of Arizona and is *sui juris*. Officer Newby's act and omissions, as identified in this lawsuit, arise out of his conduct for the City's Police Department in participating in the false arrest and imprisonment of Mr. Bassford.

18.     Defendant, Phillip Clark (hereinafter "officer Clark"), is an individual that resides in the State of Arizona and is *sui juris*. Officer Clark's act and omissions, as identified in this lawsuit, arise out of his conduct for the City's Police Department in participating in the unlawful arrest and imprisonment of Mr. Bassford.

19.     Defendant, Michael Destefino (hereinafter "officer Destefino"), is an individual that resides in the State of Arizona and is *sui juris*. Officer Destefino's act and omissions, as identified in this lawsuit, arise out of his conduct for the City's Police Department in participating in the unlawful arrest and imprisonment of Mr. Bassford.

20.     Defendant, Joseph Adams (hereinafter "Sgt. Adams"), is an individual that resides in the State of Arizona and is *sui juris*. Officer Adam's act and omissions, as identified in this lawsuit, arise out of his conduct for the City's Police Department in supervising the false arrest and imprisonment of Mr. Bassford.

21.     Defendant, John Drechsler (hereinafter "guard Drechsler"), is a resident of the State of Arizona and is *sui juris*. Guard Drechsler's act and omissions, as identified in this lawsuit, arise out of his conduct on behalf Circle K in conspiring with the City's police officers to fabricate a trespass in the third degree against Mr. Bassford.

**Facts**

5

22.     On the night of October 9, 2021, at around 10:14 p.m., Mesa PD officers Newby, Rangel, and Clark were dispatched to a convenience store located at 1145 W. Main St. Mesa, Arizona, in response to a call for service regarding a male subject who was causing a disturbance at the business (hereinafter "Circle K").

23.     Around 10:30 p.m. officer Newby observed a private citizen, who was later identified as Patrick Gonzalez (hereinafter "citizen Gonzalez"), walk onto property of Circle K while dispatched at that location. Officer Newby observed citizen Gonzalez filming the Mesa PD activity while standing next to a clearly posted no trespassing sign posted on the exterior wall of Circle K.

24.     Shortly thereafter, citizen Gonzalez was accompanied by another private citizen, who was later identified as Raymond McGaughey (hereinafter "citizen McGaughey"). Citizen McGaughey was also filming the Mesa PD officer's activities.

25.     Officer's Newby, Rangel, and Clark continued their investigation with guard Drechsler. During this time citizens Gonzalez and McGaughey began to inch closer to the officers while filming them.

26.     After a brief passage of time, the Mesa PD officers, and guard Drechsler observed around ten to fifteen additional private citizens walking westbound on the sidewalk of W. Main St. who were all holding cameras. Approximately eight of these private citizens walked onto the property of Circle K to film the Mesa PD's activity.

27.     Mr. Bassford happened to be one of the private citizens that walked onto the property of Circle K, during business hours, and engaged his First Amendment right to express

himself by filming the activity of the Mesa PD during the course of their duties that were in public view.

28.     Mr. Bassford asserts that the federal constitution secures his unalienable right to film his public officials under the First Amendment. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." As such, the personal liberty to film public officials exits under the freedom of religion, of speech, of press, of association, of assembly, and of petition, because recording his public officials to hold them accountable, in accordance with his retained right under the Ninth Amendment, for any misconduct, is a way that Mr. Bassford expresses himself in the pursuit of life and happiness.

29.     While Mesa PD officers and Circle K guard Drechsler discussed the initial call relating to the disturbance caused by a male subject, the private citizens that were filming began to get closer to the Mesa PD officers. So, guard Drechsler stopped the conversation and asked for everyone holding a camera on the property to be trespassed.

30.     In a scheme spearheaded by guard Drechsler, Mesa PD officers Newby, Rangel, and Clark colluded with guard Drechsler to unlawfully trespass Mr. Bassford, and the other citizens on Circle K's property with cameras, by enacting an unreasonable seizure and search for filming the activity of the Mesa PD officers.

31.     At around 10:34 p.m., officer Newby began approaching several private citizens, who were on Circle K's property with cameras in their possession, and began verbally telling them that they were detained. Officer Newby personally detained and handcuffed two private citizens,

who were later identified as Alexander Hartwell (hereinafter "citizen Hartwell") and Gabriel Bassford.

32.     Officer Rangel approached an unknown citizen named Roy, and his son, and detained them at the convenience store curb about fifteen feet from where officer Newby detained citizen Hartwell and Mr. Bassford.

33.     At about 10:35 p.m., Mesa PD Officer Destefino arrived on scene and observed officer Newby escort citizen Hartwell and Mr. Bassford in handcuffs to the southwest side of the convenience store and sat them on the curb. Officer DeStefano was informed by officer Newby that both individuals were being detained for trespassing.

34.     Mr. Bassford informed officer Newby that he is violating his Fourth Amendment right to reasonable seizure and search by detaining him. Moreover, that he is liable for damages if he continues to unlawfully detain him. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

35.     Thereafter, officer Destefino stood guard of officer Newby's detainees, which included Mr. Bassford, while officer Newby went inside Circle K to speak with the manager Monique Baca. Mr. Bassford asked officer Destefino why he was being detained. Mr. Bassford was then informed by officer Destefino that he was being detained for trespassing. Thereby, Mr. Bassford informed officer Destefino that the law requires reasonable notice to leave the property

before being trespassed, and that he would leave the property had he been given a reasonable warning to do so.

36.     As such, Mr. Bassford informed officer Destefino that he had not been given notice by way of a reasonable request to leave before being detained for trespassing. In accordance with ARS § 13-1502(A)(1), "a person commits criminal trespass in the third degree by knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry." Therefore, officer Destefino had knowledge of the law violation by his fellow officers and had a duty, pursuant to his oath of office, to stop the actions being taken on behalf of Mesa PD.

37.     Officer Destefino then asked Mr. Bassford for his first and last name, and Mr. Bassford replied that he would like to speak with a supervisor. So, officer Destefino called for a supervisor to come to the incident scene.

38.     Again, Mr. Bassford informed officer Destefino that he has been unlawfully detained and that the City of Mesa is being represented by his actions. Mr. Bassford further informed officer Destefino that he has the duty to uphold the law, and as so, to stop any unlawful actions of officers Newby, Rangel, and Clark. Mr. Bassford also explained to officer Destefino that the act of filming Mesa PD activity is not a felony. Pursuant to ARS § 38-231, officers and employees are required to take a loyalty oath support the Constitution of the United States and the Constitution and laws of the State of Arizona.

39.     Upon request, Sgt. Adams, who was the supervising officer, arrived at the scene of the incident location and spoke with management from Circle K and then was briefed about the

9

variables of the situation by officer Newby. After hearing of officer Newby's intentions to arrest and imprison various citizens, of which included Mr. Bassford, Sgt. Adams did not object to officer Newby's intentions. Thereby, officer Newby returned to officers, Destefino and Rangel, and instructed them to take citizen, Gonzalez and Mr. Bassford, to the Mesa PD jail to be booked on the charge of trespass in the third degree.

40.     Upon officer Newby's return to Mr. Bassford, he informed Mr. Bassford that he is having him imprisoned at the Mesa PD jail, and while officer Destefino held Mr. Bassford by his arms in cuffs, officer Newby searched Mr. Bassford for his personal effects. Mr. Bassford asked officer Newby why he is being jailed when he is willing to identify himself under duress of further imprisonment.[1]

41.     Therefore, officer Newby informed Mr. Bassford that, as the arresting officer, it is up to his discretion to imprison or release him. Officer Newby is relying on DPM 2.4.10 (3)(D) that provides: "An arrestee shall not be released under certain conditions, which include inability to establish identity. In addition, if in the opinion of the supervising lieutenant it is unsafe to release the person, they shall remain in custody."

42.     Thereafter, without informing Mr. Bassford of his *Miranda Rights*, officers Newby and Destefino searched Mr. Bassford without a breach of the peace, probable cause of a felony, or a warrant before placing him in the backseat of officer Destefino's patrol vehicle for transport to the Mesa PD jail.

---

[1] Officer Newby released detainee Patrick Gonzalez and filed charges via long form

43.     Mr. Bassford's Miranda Rights stem from the Fifth and Sixth Amendments of the federal constitution. The Fifth Amendment provides, in part, that "no person shall be compelled in any criminal case to be a witness against himself." And, the Sixth Amendment provides, in part, that "in all criminal prosecutions, the accused shall have the assistance of counsel for his defense."

44.     As such, the Mesa Police Department Policy Manual (hereinafter ("DPM") 2.4.15 (6), *Arrest Procedures – General*,  provides a person shall be read his Miranda Rights once in custody, DPM 2.4.15 (6)(A)(1), and before an officer interrogates or makes a statement designed to elicit a response. DPM 2.4.15 (6)(A)(2). In this case, Mr. Bassford met the two requirements needed for Miranda to Apply under the Mesa PD's policy. So, officer Newby should have read Mr. Bassford his Miranda Rights once he arrested him for trespassing.

45.     After arriving at the Mesa PD jail, officer Destefino asked Mr. Bassford for his name and date of birth. So, Mr. Bassford invoked his right to remain silent and right to have counsel present before responding to questioning. Officer Destefino responded to Mr. Bassford by stating that the charges were not serious and so he should cooperate by providing the information requested. Yet, Mr. Bassford did not waive his rights to remain silent and have counsel present before being interrogated by officer Destefino and the various detention officers.

46.     Because Mr. Bassford was arrested without a warrant, he should have been taken directly to a magistrate to determine whether his imprisonment was lawful, in accordance with due process of law.  Specifically, the Fourteenth Amendment of the federal constitution provides, in part, that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, [without due process of law]; nor deny to any person within its jurisdiction the equal protection of

the laws, (emphasis mine). Thus, Mr. Bassford cannot be lawfully imprisoned without due process of law.

47.     Specifically, Mr. Bassford asserts that Mesa DPM 2.4.10 (3)(D) is unlawful because, the state statutes, ARS § 13-3883 and § 13-3903, that the DPM cite for its authorities are void ab initio. First, § 13-3883 provides:

1. A peace officer, without a warrant, may arrest a person if the officer has probable cause to believe:

   1. A felony has been committed and probable cause to believe the person to be arrested has committed the felony.

   2. A misdemeanor has been committed in the officer's presence and probable cause to believe the person to be arrested has committed the offense.

   3. The person to be arrested has been involved in a traffic accident and violated any criminal section of title 28, and that such violation occurred prior to or immediately following such traffic accident.

   4. A misdemeanor or a petty offense has been committed and probable cause to believe the person to be arrested has committed the offense. A person arrested under this paragraph is eligible for release under section 13-3903.

   5. The person to be arrested has committed any public offense that makes the person removable from the United States.

2.  A peace officer may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of any traffic law committed in the officer's presence and may serve a copy of the traffic complaint for any alleged civil or criminal traffic violation. A peace officer who serves a copy of the traffic complaint shall do so within a reasonable time of the alleged criminal or civil traffic violation.

48.   Second, ARS § 13-3903 provides:

A.  In any case in which a person is arrested for a misdemeanor offense or a petty offense, the arresting officer may release the arrested person from custody in lieu of taking the person to a law enforcement facility by use of the procedure prescribed in this section.

B.  At any time after taking a person arrested for a misdemeanor offense or a petty offense to a law enforcement facility, the arresting officer, instead of taking the person to a magistrate, may release the person from further custody by use of the procedure prescribed in this section.

C.  If a person is arrested for a misdemeanor offense or a petty offense and the offense is listed in section 41-1750, subsection C, the person shall not be released pursuant to this section until the person provides either a fingerprint or a two-fingerprint biometric-based identifier to the arresting agency. The arresting agency shall provide to the arrested person a mandatory fingerprint compliance form that includes instructions on reporting to the arresting agency

for ten-print fingerprinting, including available times and locations for reporting for ten-print fingerprinting.

D.  In any case in which a person is arrested for a misdemeanor offense or a petty offense, the arresting officer may prepare in quadruplicate a written notice to appear and complaint, containing the name and address of the person, the offense charged, and the time and place where and when the person shall appear in court, provided:

  1.  The time specified in the notice to appear is at least five days after arrest.

  2.  The place specified in the notice shall be the court specified in section 13-3898.

  3.  The arrested person, in order to secure release as provided in this section, shall give his written promise so to appear in court by signing at least one copy of the written notice and complaint prepared by the arresting officer.  The officer shall deliver a copy of the notice and complaint to the person promising to appear. Thereupon, the officer shall forthwith release the person arrested from custody.

  4.  The officer, as soon as practical, shall deliver the original notice and complaint to the magistrate specified therein. Thereupon, the magistrate shall promptly file the notice and complaint and enter it into the docket of the court.

E.  The Arizona traffic ticket and complaint may be utilized not only for the purposes provided by Arizona Supreme Court rule, but to satisfy the requirements of this section.

F.  If a person gives his written promise to appear in court on a designated date pursuant to this section, and thereafter fails to appear, personally or by counsel, on or before that date, the court clerk or other court staff shall file a complaint, in writing, under oath, charging the defendant with a violation of section 13-2506, subsection A, paragraph 2 and issue a warrant for the defendant's arrest.

G.  If the person has not previously been arraigned, on the person's appearance in court for arraignment on the charge of violating section  13-2506, subsection A, paragraph 2, the court shall also arraign the person on the charge stated in the notice to appear and complaint for which the person had previously promised to appear.

H.  This section does not affect a peace officer's authority to conduct an otherwise lawful search incident to his arrest even though the arrested person is released before being taken to the police station or before a magistrate pursuant to this section.

49.    Mr. Bassford asserts that the statutes are void ab initio because they allow exceptions to due process of law regarding arrest without a warrant. [Due process] was intended to preserve established fundamental rights by requiring that they cannot be deprived except by the established modes of law as existing under the common law. Therefore, it is manifest it was not left to the legislative power to exact any process which might be devised. The [due process article]

is a restraint on the legislative as well as on the executive and judicial powers of government, and cannot be so construed as to leave congress free to make any process "due process of law," by its mere will. Accordingly, what is due process of law may be ascertained by an examination of those settled usages and modes of proceedings existing in the command and statue law of England before the emigration of our ancestors. The expressions "due process of law" and "law of the land" have the same meaning. The "law" intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was understood and administered when that instrument was framed and adopted.

50.     The mode of arrest by which one can be deprived of his liberty is to be determined by the pre-existing common law principles and modes of procedure, which provide that a properly constituted warrant of arrest is a process at common law by which persons could lawfully be deprived of their liberty, and an arrest without warrant recognized only specific and well-defined cases whereby a citizen could be deprived of his liberty. Whereby, the common law drew a distinction between an arrest for misdemeanors. At common law, as a general rule, an arrest could not be made without warrant for an offense less than felony, except for a breach of the peace, and when an officer institutes an arrest, he now has undertaken the duty to bring the arrested party to a magistrate, because the person can only be released by judicial, not executive authority.

51.     Thus, it must not be forgotten that there can be no arrest without due process of law. An arrest without warrant has never been lawful, except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer, because this procedure for arrest is part of the "due process of law" provision of the constitution which protects citizens from the arbitrary infringement of their

freedom to movement. Accordingly, any specific authority for arrests must be based on the common law procedures that allowed a deprivation of one's liberty, because no arrest can be lawfully made without warrant, except in the cases at common law before our constitution was adopted.

52.     Since a citizen cannot be deprived of liberty except by the law of the land, or due process of law, no statute or ordinance can constitutionally be enacted which allows arrests without a warrant for any purpose the legislature decides, because "due process" is a limitation upon the legislature, and thus a legislative statute cannot be the due process by which one can be deprived of his liberty by arrests. So, the statutes, ARS § 13-3883 and § 13-3903, are void ab initio because they allow for arrest for misdemeanors and violations, and also release for these violations.

53.     Specifically, under the statutes "a peace officer, without a warrant, may arrest a person if the officer has probable cause to believe a misdemeanor has been committed in the officer's presence and probable cause to believe the person to be arrested has committed the offense." See ARS § 13-3883(A) (2), (3), (4), and (5); see also ARS § 13-3903 provides: (A) "In any case in which a person is arrested for a misdemeanor offense or a petty offense, the arresting officer may release the arrested person from custody in lieu of taking the person to a law enforcement facility by use of the procedure prescribed in this section; (B) At any time after taking a person arrested for a misdemeanor offense or a petty offense to a law enforcement facility, the arresting officer, instead of taking the person to a magistrate, may release the person from further custody by use of the procedure prescribed in this section."

54.     Furthermore, ARS § 13-3903(C) provides: "If a person is arrested for a misdemeanor offense or a petty offense and the offense is listed in section 41-1750, subsection C,

the person shall not be released pursuant to this section until the person provides either a fingerprint or a two-fingerprint biometric-based identifier to the arresting agency. The arresting agency shall provide to the arrested person a mandatory fingerprint compliance form that includes instructions on reporting to the arresting agency for ten-print fingerprinting, including available times and locations for reporting for ten-print fingerprinting." So, Mr. Bassford further assert that ARS § 13-3903 is void because it allows executive officers to arrest and release, and take property (fingerprints and images of arrestee) in violation of due process, in accordance with the "*[n]o takings clause*" under the Fourteenth Amendment of the federal constitution.

55.     The laws, ARS § 13-3883 and § 13-3903, clearly bypass the procedure for bringing the arrestee before a magistrate when arrested without a warrant, and so provide that an executive officer may perform a judicial function, in violation of the Arizona Constitution's "*distribution of powers clause*" under Article 3 that provides: "The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

56.     Mr. Bassford reasserts that the Mesa PD DPM 2.4.10 is unlawful because they are based on void statutes, and also alleges that officer Destefino negligently and willfully chose to follow officer Newby's directive, with the tacit agreement of officers, Clark, Rangel, and Adams and transported Mr. Bassford, pursuant to DPM 2.4.10, to the Mesa PD jail. In essence, Mr. Bassford alleges that the officers all had a duty, pursuant to their oaths of office, to uphold the

federal laws that are set forth above, by not enforcing the State' void laws and the Mesa Police Department's void policy under 2.4.10.

57.    Once booked at the Mesa PD jail, Mr. Bassford was subjected to several assault and batteries because he had his personal property, his fingerprints and photograph, taken without appearing before a magistrate or having a trial finding him guilty of a crime. Further, Mr. Bassford was imprisoned for no less than sixteen hours without a warrant, probable cause of a felony, or a breach of the peace. As such, Mr. Bassford's name, photograph, and the charge of trespassing were made available to the public by placing this information on the Maricopa County Sherriff's office arrest records.

58.    The following day Mr. Bassford appeared in the Mesa Municipal Court, along with his legal counsel Juliana Manzanares (Bar No.: 033595) of Maldonado Law Group, and entered a not guilty plea to the charge of trespassing in the third degree. Mr. Bassford alleges that the prosecutor JD had an ethical duty to dismiss the charge based upon the insufficient evidence in the probable cause statement.

59.    Officer Newby's probable cause statement for Mr. Bassford's arrest and imprisonment is as follows: "While on scene, the defendant was observed by PD on the incident location private party with the listed co-defendants. The defendant was at the incident location to record PD activity and he did not enter the convenience store to make a purchase. The defendant stated he was at the incident location to film PD. The incident location security guard requested that the defendant and co-defendants all be trespassed. It should be noted that the incident location participates in the City of Mesa no trespassing program and the property is adequately marked with no trespassing signage. The defendant was verbally advised he was detained by PD. The defendant

turned around in an attempt to walk away from PD. The defendant would later be identified by AZ

ID."

60.     First, the City of Mesa no trespass enforcement program does not apply in this

matter because, it is only valid during non-business hours. Second, as explained online in the Mesa

Trespass Enforcement Program, at https://www.mesaazpolice.gov/crime-safety/trespass-

enforcement-program, the Trespass Enforcement Program only applies to homeless encampments,

as explained by the following:

> 5. GUIDELINES – HOMELESS ENCAMPMENT PROCEDURES:
>
> > 5.1 Homeless Encampment
> >
> > A.   When a call for service or on view activity reveals a homeless
> > encampment, determine the owner of said property and attempt to
> > contact property owner.
> >
> > B.   Determine if the property owner partakes in the City of Mesa
> > Trespass Enforcement Program.
> >
> > C.    If the owner of the property does not partake in the Trespass
> > Enforcement Program and wishes to prosecute those that are
> > trespassing on their property, have the owner complete DPM
> > 2.8.80F2, Trespass Enforcement Request Letter, giving authority for
> > MPD officers to arrest violators of ARS 13- 1502, Criminal
> > Trespass in the Third Degree.

D.   Contact Community Bridges Path Workers from the Community Outreach pamphlet and advise them of the location of the homeless encampment.

E.   Officers visit the encampment with the Path Workers and advise all persons on the property they are in violation of ARS 13-1502, and the property owner wishes to assist in prosecution. Provide all persons on property with DPM 2.9.20A, Community Outreach Pamphlet for resources and allow Path Workers to visit with the persons in violation of ARS 13-1502.

F.   Advise all persons on property that they have 72 hours to vacate the property with their personal belongings, and anything left behind will be impounded (as Found) and eventually disposed of if unclaimed at the MPD Property and Evidence Section, or it may be disposed of by the private property owner.

Refer private property owners to City of Mesa Code Compliance Department for assistance to see if assistance is available for property clean-up.

G.   DPM 2.9.70F1 Notice to Vacate is available for members to provide to explain the vacate notice and has additional referral resources.

H.   All property found unattended or abandoned must be handled in accordance with DPM 3.2.20 Evidence Disposition and/or

Removal. Items that pose a health hazard such as spoiled food, syringes, insect infested items, etc. do not need to be retained.

- Note: When officers receive consent from the owner of the personal property to dispose of the items, those items do not require impound.

I. Follow up with Path Workers 72 hours after initial contact.

J. If persons are still in violation of ARS 13-1502, issue citations in accordance with the Program for Community Outreach.

61.     Based on the probable cause statement, Mr. Bassford asserts that a competent prosecutor would have determined that the statement does not contain sufficient facts to state a claim for trespass in the third degree, because ¶30, A.R.S. § 13-1502(A)(1) provides that "a person commits criminal trespass in the third degree by knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry." Since the probable cause statement does not state that Mr. Bassford has received a reasonable request to leave the incident location by a police officer, the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry, the probable cause statement lacks sufficient evidence to state a claim for a relief.

62.     On November 2, 2021, Mr. Bassford spoke with Lauren Ramirez who acted on behalf of the prosecutor's office and offered him the options of a plea deal or going to trial. Thus, the prosecution was malicious because of their intentions to proceed to trial on the basis of the probable cause statement which lacked sufficient facts. In accordance with the Rules of the

Arizona Supreme Court, Rule 42 (a), a prosecutor must refrain from proceeding in a case that is not supported by probable cause. Therefore, Mr. Bassford entered a plea of not guilty and was provided with the pretrial court date of December 2, 2021.

63.   Thereafter, on November 8, 2021, the Mesa Prosecutor Paul Hawkins submitted a Motion to Dismiss without Prejudice and this motion was granted on by the court. The court's order was filed into the record on November 10, 2021.

64.   So, on November 23, 2021, Mr. Bassford submitted a Motion to Dismiss with prejudice. Whereby, the court scheduled a hearing for Mr. Bassford's motion that was heard on December 29, 2021. At the hearing, the court asked Mr. Bassford to cite case precedence showing why it should dismiss the case with prejudice. Thereby, Mr. Bassford asserted he was not prepared to present case law as the court was asking him to do. He then requested a continuance of the hearing in order to obtain legal counsel for proper representation of the matter. So, hearing was rescheduled for February 28, 2022.

65.   Then, on February 28, 2022, Mr. Bassford submitted a Motion to Dismiss the Accusatory Instrument with prejudice. The Motion does cite case precedence to dismiss the charge of trespass with prejudice. However, the court denied Mr. Bassford's motion and left the case open for future prosecution by the City.

66.   At all times mentioned above, the City of Mesa Police Department was represented by and through the acts of its officers, Newby, Destefino, Rangel, Clark, and Adams, because each of those officers were directly involved in the aforementioned acts herein scribed.

67.     At all times mentioned above, the City of Mesa was represented by and through the acts of its agencies, the Mesa PD and Municipal Court, because of those respective agencies' officers that were directly involved in the aforementioned acts herein scribed.

## Count I

### Conspiracy to Deprive Plaintiff of Civil Rights

### (A.R.S. § 13-1003(A) and 42 U.S.C. § 1983)

*(Against Newby, Rangel, Clark, Destefino, Adams, and Drechsler)*

68.     The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

69.     Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler (the "Conspiracy Defendants") are all "persons" within the meaning of ARS § 13-1003(A) and 42 U.S.C. § 1983.

70.     The Conspiracy Defendants conspired with each other to violate ARS 13-1502(A)(1) and 42 U.S.C. § 1983, and knowingly agreed, conspired, and acted in concert for the express purpose of depriving the Plaintiff of his First Amendment liberty, in retaliation for him using it, to film them in the course of the public duties, by concocting a trespass in the third degree.

71.     The Conspiracy Defendants knew that they were engaged in a conspiracy to commit the predicate acts, including the filing of a probable cause statement that is based upon deliberately fabricated evidence (A.R.S § 13-2702(A)(2)), and they knew that the predicate acts were a part of unlawful seizure and search, and the participation and agreement of each of them was necessary to allow the commission of this unlawful seizure and search. This conduct constitutes conspiracy to violate ARS 13-1502(A)(1), in violation of ARS § 13-1003(A).

72.     Each of the Conspiracy Defendants knew about and agreed to facilitate guard Drechsler's scheme to fraudulently concoct a claim of trespass against Plaintiff to undermine his First Amendment right to film Mesa PD activity through the wrongful acts identified herein. It was part of the conspiracy that the Conspiracy Defendants would commit an unlawful seizure and search, and file a deliberately fabricated charge of trespassing with the Mesa Prosecutor's office, in the conduct of the Mesa PD's affairs for the City, and includes the acts of false arrest and imprisonment, perjury, and a malicious prosecution as set forth herein.

73.     The Conspiracy Defendants had a meeting of the minds, common intent, were aware of, and conspired with each other in connection with the commission of the above-mentioned violations of 42 U.S.C. § 1983.

74.     Therefore, the actions of the Conspiracy Defendants constituted a conspiracy to deprive Plaintiff of his civil rights in violation of A.R.S. § 13-1003(A) and 42 U.S.C. § 1983.

75.     Based on the foregoing, the Conspiracy Defendants' actions constitute a violation of 42 U.S.C. § 1983 and A.R.S. § 13-1003(A).

## Damages

76.     The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of A.R.S. § 13-1003(A) and 42 U.S.C. § 1983.

77.     As a direct and proximate result of conspiracy to deprive Plaintiff of civil rights though the Defendants' actions, the Plaintiff has been injured in his person because he was unlawfully subjected, with no Miranda warning, to an arrest, a search, imprisonment, and a malicious prosecution, while losing his freedom to film Mesa PD's activity and having his

property, a Sony Camcorder, damaged by it being scratched from the asphalt, in addition to costs of defense and attorneys' fees.

78.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

79.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $125,000 in compensatory damages, $187,500 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

80.    WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

## Count II

## False Arrest

### (US Const. Amend. 4, and 42 U.S.C. § 1983)

(Against Newby, Rangel, Clark, Destefino, Adams, and Drechsler)

81.     The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

82.     The Defendants, Newby, Rangel, Clark, Adams, and Drechsler (the "Defendants") are all "persons" within the meaning of 42 U.S.C. § 1983.

83.     As set forth above, Mr. Bassford was exercising his personal liberty right to film public officials when he was deprived, in retaliation, of this right by officer Newby, Rangel, Clark, and Adams unlawful seizure of himself under color of law.

84.     Defendant Drechsler is also responsible for the false arrest Plaintiff suffered at the hands of the Mesa PD officers, Newby, Rangel, Clark, and Adams, because he directly spearheaded the scheme to have Plaintiff trespassed for exercising his right to film the Mesa PD in the performance of the duties.

85.     The Defendants seizure was unlawful because it violated Plaintiff's Fourth Amendment right to either a warranted seizure or reasonable search based upon probable cause of a felony.

86.     Based on the foregoing, the Defendants' actions constitute a violation of 42 U.S.C. § 1983 and the Fourth Amendment.


**Damages**


87.     The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of the Fourth Amendment and 42 U.S.C. § 1983.As a direct and proximate result of conspiracy to deprive Plaintiff of civil rights though the Defendants' actions, he

Plaintiff has been injured in his person because he was unlawfully subjected, with no Miranda warning, to an arrest, while losing his freedom to film Mesa PD's activity and having his property, a Sony Camcorder, damaged by it being scratched from the asphalt, in addition to costs of defense and attorneys' fees.

88.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

89.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $25,000 in compensatory damages, $37,500 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

90.    WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

## Count III

## Deprivation of freedom of Expression

**(US Const. Amend. 1, and 42 U.S.C. § 1983)**

(Against Newby, Rangel, Clark, Destefino, Adams, and Drechsler)

91.    The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

92.    Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler (the "Defendants") are all "persons" within the meaning of 42 U.S.C. § 1983.

93.    The Defendants all participated in the violation of 42 U.S.C. § 1983 in this matter, by conspiring to deprive the Plaintiff of his First Amendment liberty to film government officials, who are performing their duties in public view, by alleging a perjured claim of trespass to have him unlawfully arrested, and acted in concert for the express purpose of depriving the Plaintiff his right to film Mesa PD, in retaliation for him using it.

94.    Defendant Drechsler is also responsible for the unlawful imprisonment Plaintiff suffered at the hands of the Mesa PD officers, Newby, Rangel, Clark, and Adams, because he directly spearheaded the scheme to have Plaintiff trespassed for exercising his right to film the Mesa PD in the performance of the duties.

95.    The Defendants' unlawful seizure deprived the Plaintiff of his First Amendment liberty to express himself by recording public officials in the pursuit of life and happiness.

96.    Based on the foregoing, the Defendants' actions constitute a violation of the 42 U.S.C. § 1983 and the First Amendment.

**Damages**

97.    The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of the First Amendment and 42 U.S.C. § 1983. As a direct and

proximate result of Defendants' actions, the Plaintiff has suffered injury to his personal liberty to freely express himself, pursuant to the First Amendment's right to the freedom of religion, speech, press, assembly, and petition clauses, and continues to suffer in health, emotionally and mentally, including but not limited to, actual care and treatment for anxiety…actual, compensatory, special, incidental, and consequential damages in addition to costs of defense and attorneys' fees.

98.     Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

99.     The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $1 in nominal damages, $125,000 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

100.     WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

**Count IV**

**False Imprisonment**

**(US Const. Amend. 4, and 42 U.S.C. § 1983)**

(Against Newby, Rangel, Clark, Destefino, Adams, and Drechsler)

101.    The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

102.    Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler (the "Defendants") are all "persons" within the meaning of 42 U.S.C. § 1983.

103.    The Defendants all participated in the violation of 42 U.S.C. § 1983 in this matter, by conspiring to deprive the Plaintiff of his First Amendment liberty to film government officials, who are performing their duties in public view, by alleging a perjured claim of trespass to have him unlawfully imprisoned, and acted in concert for the express purpose of depriving the Plaintiff his right to film Mesa PD, in retaliation for him using it.

104.    Defendant Drechsler is also responsible for the unlawful imprisonment Plaintiff suffered at the hands of the Mesa PD officers, Newby, Rangel, Clark, and Adams, because he directly spearheaded the scheme to have Plaintiff trespassed for exercising his right to film the Mesa PD in the performance of the duties.

105.    The Defendants imprisonment of the Plaintiff was unlawful because it violated Plaintiff's Fourth Amendment right to either a warranted seizure or reasonable seizure based upon probable cause of a felony, and also because the Defendants did not take the Plaintiff directly to a magistrate upon being arrested without a warrant, in accordance with the Fourth Amendment.

106.    Based on the foregoing, the Defendants' actions constitute a violation of the 42 U.S.C. § 1983 and the Fourth Amendment.

**Damages**

107.    The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of the Fourth Amendment and 42 U.S.C. § 1983.

108.    As a direct and proximate result of conspiracy to deprive Plaintiff of civil rights though the Defendants' actions, the Plaintiff has been injured in his person because he was unlawfully subjected, with no Miranda warning, to an unlawful arrest and imprisonment, while losing his freedom to film the Mesa PD's activity and having his property, a Sony Camcorder, damaged by it being scratched from the asphalt, in addition to costs of defense and attorneys' fees.

109.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

110.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $1,043,472 in compensatory damages, $2,915,213 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

111.     WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

**Count V**

**(US Const. Amend. 5 & 6, and 42 U.S.C. § 1983)**

**Violation of Miranda Rights**

(Against Newby and Destefino)

112.     The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

113.     Defendants, Newby and Destefino (the "Defendants") are all "persons" within the meaning of 42 U.S.C. § 1983.

114.     Defendants participated in the violation of 42 U.S.C. § 1983 in this matter, by depriving the Plaintiff of his right to be informed of the right to remain silent, and that anything he says can and will be used against him in a court of law, and also that he may have counsel present before he responds to any questioning.

115.     The Defendants violated his Miranda Rights during the initial arrest of the Plaintiff, and also when the Plaintiff was being searched and loaded in the back of Destefino's patrol vehicle for transport to the Mesa PD jail.

116.     The Defendants violated the Fifth and Sixth Amendments by not informing the Plaintiff of his right to remain silent and have counsel present before answering questions.

117.    Based on the foregoing, the Defendants' actions constitute a violation of the 42 U.S.C. § 1983 and the Fifth and Sixth Amendments.

**Damages**

118.    The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of the Fifth and Sixth Amendments and 42 U.S.C. § 198.

119.    As a direct and proximate result of conspiracy to deprive Plaintiff of civil rights though the Defendants' actions, the Plaintiff has been injured in his person because he was unlawfully subjected, with no Miranda warning, to an unlawful arrest and imprisonment, while losing his freedom to film the Mesa PD's activity and having his property, a Sony Camcorder, damaged by it being scratched from the asphalt, in addition to costs of defense and attorneys' fees.

120.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

121.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $1 in compensatory damages, $125,000 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

122.     WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

## Count VI

### Deliberate Fabrication of Statement

### (A.R.S § 13-2702(A)(2) and 42. U.S.C. § 1983)

(Against Newby, Rangel, Clark, Destefino, Adams, and Drechsler)

123.     The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

124.     Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler (the "Conspiracy Defendants") are all "persons" within the meaning of A.R.S § 13-2702(A)(2) and 42 U.S.C. § 1983.

125.     Defendants participated in the violation of A.R.S § 13-2702(A)(2) and 42 U.S.C. § 1983 in this matter, by filing with the Mesa Prosecutor's office a fabricated charge of trespassing in the third degree.

126.     Defendant Drechsler is also responsible for the perjured charge of trespass against the because he directly spearheaded the scheme to have Plaintiff trespassed for exercising his right to film the Mesa PD in the performance of the duties, and his statement, as witness to the events, was filed with the Mesa Prosecutor's office, by Mesa PD officer Newby in his report.

127.     The Defendants' perjured statement of trespassing against the Plaintiff resulted in false imprisonment, and a malicious prosecution by the City Prosecutor's office.

128.    Based on the foregoing, the Defendants' actions constitute a violation of the 42

U.S.C. § 1983 and A.R.S § 13-2702(A)(2).

## Damages

129.    The Plaintiff has been injured in his person and property as a direct and proximate

result of Defendants' violation of 42 U.S.C. § 1983 and A.R.S § 13-2702(A)(2).

130.    As a direct and proximate result of Defendants' actions, the Plaintiff has suffered

injury to his personal liberty to freely express himself, pursuant to the First Amendment's right to

the freedom of religion, speech, press, assembly, and petition clauses, and continues to suffer in

health, emotionally and mentally, including but not limited to, actual care and treatment for

anxiety…actual, compensatory, special, incidental, and consequential damages in addition to costs

of defense and attorneys' fees.

131.    Among other things, the Plaintiff was forced to incur expenses in an amount to be

determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and

continuing to accrue, in the form of related expenses incurred in connection with his effort to

litigate this case, defend against the Defendants' previous actions and the investigations and/or

official proceedings which arose therefrom, in addition to the loss of future employment

opportunities for himself. All of these injuries were sustained within, and were the result of conduct

occurring within the City of Mesa, Arizona.

132.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983,

compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this

litigation. Specifically, the Plaintiff is seeking $1 in nominal damages, $125,000 in punitive

damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

133.     WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

## Count VII

## Malicious Prosecution

## (42 U.S.C. § 1983)

### (Against JD and Ramirez)

134.     The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

135.     Defendants, JD and Ramirez (the "Defendants") are all "persons" within the meaning of 42 U.S.C. § 1983.

136.     Defendants participated in the violation of 42 U.S.C. § 1983 and the Fifth Amendment in this matter, by prosecuting the Plaintiff in this matter using a probable cause statement that is wanton for sufficient facts to state a claim for trespassing in the third degree.

137.     The Defendants' prosecution was ultimately dismissed by the court on via a motion for dismissal filed by the City Prosecutor's office.

138.     Based on the foregoing, the Defendants' actions constitute a violation of the 42 U.S.C. § 1983 and the due process clause of the Fifth Amendment.

## Damages

139.    The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of 42 U.S.C. § 1983 and the Fifth Amendment.

140.    As a direct and proximate result of Defendants' actions, the Plaintiff has suffered injury by a malicious prosecution that has resulted in a continuing suffering of health, emotionally and mentally, including but not limited to, actual care and treatment for anxiety and PTSD, in addition to the costs of defense and attorneys' fees.

141.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

142.    Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $1 in nominal damages, $125,000 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

143.    WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, JD and Ramirez, for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

**Count VIII**

**(42 U.S.C. § 1983)**

**Unlawful Department Policy**

(Against the Mesa Police Department)

144.     The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

145.     Defendant, Mesa PD (the "Defendant") is a "persons" within the meaning of 42 U.S.C. § 1983.

146.     Defendant's DPM 2.4.10 is unlawful because it allow arrest for violations of the law less than a misdemeanor, and also because it allows executive officers the power to release an arrestee at their discretion in violation of the due process of law, pursuant to the Fourth Amendment's no warrant shall be issued, but upon probable cause, supported by Oath or affirmation.

147.     Based on the foregoing, the Defendant's DPM 2.4.10 constitute a violation of the Fourth Amendment and 42 U.S.C. § 1983.

**Damages**

148.     The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of 42 U.S.C. § 1983 and the Fifth Amendment.

149.     As a direct and proximate result of Defendant's unlawful policy, the Plaintiff has suffered injury by a false arrest and imprisonment that has resulted in a continuing suffering of health, emotionally and mentally, including but not limited to, actual care and treatment for anxiety and PTSD, in addition to the costs of defense and attorneys' fees.

150.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

151.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $125,000 in nominal damages, $187,500 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

152.    WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, JD and Ramirez, for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

## Count IX

## Deprivation of Equal Protection of the Laws

## (US Const. Amend. 14, and 42 U.S.C. § 1983)

(Against Newby, Rangel, Clark, Destefino, Adams, Drechsler, JD, Ramirez, and the Mesa PD)

153.    The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

154.    The Defendants, Newby, Rangel, Clark, Adams, Drechsler, JD, Ramirez, and the Mesa PD (the "Defendants") are all "persons" within the meaning of 42 U.S.C. § 1983.

155.    As set forth above, Mr. Bassford was exercising his personal liberty right to film public officials when he was deprived, in retaliation, of this right by officer Newby, Rangel, Clark, and Adam's unlawful seizure, search, and imprisonment of himself in the Mesa PD jail.

156.    Defendant Drechsler is also responsible for the false arrest Plaintiff suffered at the hands of the Mesa PD officers, Newby, Rangel, Clark, and Adams, because he directly spearheaded the scheme to have Plaintiff trespassed for exercising his right to film the Mesa PD in the performance of the duties.

157.    Defendants participated in the violation of 42 U.S.C. § 1983 and the Fourteenth Amendment in this matter, by prosecuting the Plaintiff using a probable cause statement that is wanton, on its face, for sufficient facts to state a claim for trespassing in the third degree.

158.    The Defendants deprivation of Plaintiff's aforementioned civil rights violates the due process and equal protection of the laws clauses of the Fourteenth Amendment.

159.    Based on the foregoing, the Defendants' actions constitute a violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.

### Damages

160.    The Plaintiff has been injured in his person and property as a direct and proximate result of Defendants' violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

161.    As a direct and proximate result of conspiracy to deprive Plaintiff of civil rights though the Defendants' actions, the Plaintiff has been injured in his person because he was unlawfully subjected, with no Miranda warning, to an arrest, while losing his freedom to film Mesa

PD's activity and having his property, a Sony Camcorder, damaged by it being scratched from the asphalt, in addition to costs of defense and attorneys' fees.

162.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

163.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983, compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this litigation. Specifically, the Plaintiff is seeking $1 in compensatory damages, $125,000 in punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in the litigation of this matter.

164.    WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this Court enter a Judgment for Gabriel J. Bassford and against the Defendants, Newby, Rangel, Clark, Destefino, Adams, and Drechsler for damages, including compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this Court may deem just and proper.

## Count X

## Respondeat Superior/ Vicarious Liability

### (42 U.S.C. § 1983)

(Against the City of Mesa)

165.    The Plaintiff avers the allegations contained in the preceding paragraphs and incorporates them in this count, as if set forth at length herein.

166.    Under the doctrine of respondeat superior, the Defendant, the City of Mesa is vicariously responsible for the torturous conduct of its agents, servants, representatives, employees and/or contractors.

167.    Specifically, under the doctrine of respondeat superior, the City is responsible for the tortious actions committed by its employees, Newby, Rangel, Clark, Destefino, Adams, Ramirez, and JD, employed at the Mesa Police Department and Mesa Prosecutor's Office.

168.    The Mesa PD officers used the Mesa Prosecutor's Office, which are run by the City of Mesa, to help the Mesa PD officers achieve their goal of a malicious prosecution, against the Plaintiff, for the charge of trespassing in the third degree.

169.    At all material times, the above-named employees were all acting within the scope of their employment, performing work for their employer at the time of the tortious conduct, and therefore are responsible for the actions of their employees.

170.    Among other things, the Plaintiff was forced to incur expenses in an amount to be determined at trial, but known to be in excess of eight-one thousand ($81,000) dollars and continuing to accrue, in the form of related expenses incurred in connection with his effort to litigate this case, defend against the Defendants' previous actions and the investigations and/or official proceedings which arose therefrom, in addition to the loss of future employment opportunities for himself. All of these injuries were sustained within, and were the result of conduct occurring within the City of Mesa, Arizona.

171.    The Plaintiff is entitled to recover, pursuant to Title 42 U.S.C. § 1983,

compensatory and punitive damages, and is also entitled to recover attorneys' fees and costs of this

litigation. Specifically, the Plaintiff is seeking $1,544,624 in compensatory damages, $2,727,708 in

punitive damages, in addition to the $80,000 for attorney fees, to date and continually accruing, in

the litigation of this matter.

172.    WHEREFORE, the Plaintiff, Gabriel J. Bassford, respectfully requests that this

Court enter a Judgment for Gabriel J. Bassford and against the Defendant City of Mesa, including

compensatory and punitive damages, costs, attorneys' fees, and such further and other relief as this

Court may deem just and proper.

### Jury Demand

173.    The Plaintiff hereby demands a trial by jury of all issues so triable.

THE PLAINTIFF

May 25, 2022

GABRIEL J. BASSFORD