JL

WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Gabriel Bassford,

               Plaintiff,

v.

City of Mesa, et al.,

               Defendants.

No.   CV-22-00572-PHX-JAT (ESW)

**ORDER**

Pro se Plaintiff Gabriel Bassford brought this civil rights action pursuant to 42 U.S.C. § 1983.  Defendants City of Mesa, Sergeant Joseph Adams, and Officers Kyler Newby, Phillip Clark, and Michael Destefino move for summary judgment on the merits of Plaintiff's First and Fourth Amendment and based on qualified immunity.  (Doc. 77.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 84), and he opposes the Motion.  (Doc. 97.)  Defendants filed a Reply, Plaintiff filed a Sur-Reply, and Defendants filed a Response to Plaintiff's Sur-Reply.  (Docs. 102, 110, 112.)

The Court will grant in part and deny in part the Motion for Summary Judgment.

## I.    Background

As relevant here, in the First Amended Complaint, Plaintiff alleges that Defendants Newby and Clark unreasonably seized and searched him and unlawfully arrested him for filming police officers' activity at a convenience store.  (First Amended Complaint (FAC), Doc. 9, ¶¶ 83-85.)  Plaintiff asserts Defendants Newby, Clark, Destefino, and Adams

retaliated against Plaintiff for exercising his First Amendment right to film police officers in the course of their public duties. (*Id.* ¶¶ 93-94.) Plaintiff claims Defendants Newby, Clark, Destefino, and Adams unlawfully imprisoned him in violation of the Fourth Amendment. (*Id.* ¶¶ 103-105.) Plaintiff contends the City of Mesa has an unconstitutional written policy—DPM 2.4.10—that resulted in his false imprisonment. (*Id.* ¶¶ 146-147.)

On screening the First Amended Complaint under 28 U.S.C. § 1915(e), the Court determined that Plaintiff had stated the following claims against Defendants Newby, Clark, Destefino, and Adams: a Fourth Amendment false arrest claim in Count Two, a First Amendment claim freedom of expression claim in Count Three, and a Fourth Amendment unlawful imprisonment claim in Count Four.[1] (Doc. 13 at 12.) The Court also determined that Plaintiff stated a claim in Count Eight against the City of Yuma based on the allegedly unlawful policy. (*Id.* at 14.) The Court directed Defendants to answer the claims. (*Id.* at 12, 14.) The Court dismissed the remaining claims and Defendants. (*Id.* at 11-15.)

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

---

[1] The Court determined that Plaintiff stated a claim against another officer, Officer Rangel. Plaintiff failed to serve Officer Rangel, and on February 27, 2024, the Court dismissed Rangel. (Doc. 103.)

jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

**III.   Facts**

   **A.   Undisputed Facts**

On October 9, 2021, Mesa Police Department officers responded to a call by John Dreschler, a Circle K security guard, to respond to a Circle K location to investigate another matter.  (Defs.' Statement of Facts (DSOF), Doc. 81 at 1 ¶ 1.)  While Mesa Police Officers met with Dreschler in the Circle K parking lot, Plaintiff and three other individuals in Plaintiff's vehicle saw the Mesa Police Officers in the parking lot and decided to film the police activity.  (*Id.* ¶ 2.)

Plaintiff parked his vehicle on a nearby street, and Plaintiff and the other three occupants walked toward the Circle K.  (*Id.*)  Plaintiff walked onto the Circle K driveway and into the Circle K parking lot, all while filming the Mesa Police Officers.  (*Id.*) Defendant Newby told Dreschler, "you have six new customers out here.  These guys are waiting to buy something with all their cameras."  (Pl.'s Controverting Statement of Facts (PCSOF), Doc. 98 at 2 ¶ 6.)  Dreschler noticed multiple individuals standing within the Circle K parking lot and holding cameras or cell phones.  (*Id.*)  Drechsler asked who the individuals recording them were.  (*Id.* ¶ 7.)  Defendant Newby told Dreschler that they

were First Amendment "auditors" and not customers.  (*Id.*)  Dreschler "agreed" with Defendant Newby's "assessment" that the individuals filming them were not acting like Circle K customers and told Defendant Newby, "You can trespass them if you want to." (*Id.*)  Defendant Newby responded, "Oh.  You want them trespassed," and told Defendant Clark that Dreschler "want[ed] them trespassed." (*Id.*)  Defendant Newby instructed Clark to "seize" the individuals who were standing in the Circle K parking lot and filming the officers.  (*Id.*)

Plaintiff was facing and filming towards the store's exterior east wall and was roughly 46 feet from the Circle K "NO TRESPASSING" sign on the store's east wall. (DSOF ¶ 8.)  Defendant Newby approached Plaintiff in the Circle K parking lot.  (*Id.* ¶ 9.) Based on Plaintiff's location in the Circle K parking lot and proximity to the "NO TRESPASSING" sign, Defendant Newby determined that the "NO TRESPASSING" sign provided Plaintiff with reasonable notice that he was prohibited from entering onto Circle K's private property to film from the convenience store's commercial parking lot and property.  (DSOF ¶ 10.)  Based on Drechsler's determination that the individuals filming on Circle K property were trespassing, the proximity of Plaintiff to the "NO TRESPASSING" sign as perceived by Defendant Newby, Newby's understanding that Plaintiff was trespassing on Circle K's private property and not acting as a Circle K customer, and Newby's law enforcement training and experience regarding investigations involving criminal trespass, Newby believed he possessed reasonable suspicion and probable cause that Plaintiff had violated Arizona's criminal trespass law.  (*Id.* ¶ 11.)  From the location where Plaintiff stood when approached by Defendant Newby, approximately 46 feet from the "NO TRESPASSING" sign, Defendant Newby believed the "NO TRESPASSING" sign was easy to recognize and read, and pursuant to his law enforcement training and experience, that it provided "reasonable notice" prohibiting non-customers from entry onto the Circle K property without prior permission from Circle K.  (*Id.* ¶ 13.) Defendant Newby understood that Plaintiff did not have prior permission from Circle K to

enter the Circle K property as a non-customer for the purpose of filming or recording from the private property. (*Id.* ¶ 14.)

Defendant Newby placed Plaintiff in handcuffs, walked Plaintiff over to the nearby curb, and asked Plaintiff to sit on the curb. (*Id.* ¶ 15.) Defendant Destefino arrived after Defendant Newby placed Plaintiff in handcuffs and just after Defendant Newby walked Plaintiff to the storefront's curb where Plaintiff sat down. (*Id.* ¶ 17.) Defendant Newby asked Defendant Destefino to determine Plaintiff's identity, informed Defendant Destefino and Plaintiff that Plaintiff was detained for trespassing, and left the immediate vicinity to continue the investigation. (*Id.* ¶ 18.) Plaintiff informed Defendant Destefino that he would like to speak with a supervisor before identifying himself because there was no probable cause for his seizure, and Defendant Destefino informed Plaintiff that his request to speak with a supervisor was "okay with him" and that a supervisor was on his way. (PCSOF ¶ 19.)

Defendant Clark, who was investigating other individuals also trespassing on Circle K's property on the opposite side (north facing side) of the Circle K store -- did not have contact with Plaintiff and did not converse with Plaintiff on the night of this incident. (DSOF ¶ 20.) Defendant Adams responded to the Circle K after Plaintiff was detained in handcuffs and while Plaintiff was sitting on the storefront's curb near the west-facing wall. (*Id.* ¶ 21.) Defendant Adams learned from Defendant Newby that the Circle K store's representative, Security Officer Drechsler, had determined that Plaintiff and the other individuals in the Circle K parking lot were determined by the Circle K Security Officer to be trespassing on Circle K property because they were not acting as customers. (*Id.* ¶ 22.) Defendant Newby determined that Plaintiff would be transported at the Mesa Holding Facility where he would be booked for violating Criminal Trespass. (*Id.* ¶ 23.)

Defendant Destefino drove Plaintiff from the Circle K property to Mesa Police Department's Holding Facility, where staff booked Plaintiff for criminal trespass in the third degree, in violation of Arizona Revised Statutes § 13-1502(A)(1). (*Id.*) The next day, Plaintiff was charged in Mesa Municipal Court with one count of trespass in the third-

degree.[2]  Plaintiff appeared before a judge and had a lawyer representing him during the hearing.  (*Id.* ¶ 24; Decl. of Joseph Adams, Doc. 82-13 at 4 ¶ 14.)  On November 9, 2022, the charge was dismissed.[3]

**B.  Plaintiff's Additional Facts**

Circle K's "No Trespassing" sign states, "NO TRESPASSING–A.R.S. 13-1502" and does not specifically prohibit the public from video recording on the store's premises.  (PSOF ¶ 35.)  The "No Trespassing" sign on Circle K's exterior east wall was to the east of the location Plaintiff was filming, hidden 46 feet away above a blue Amazon Pick Up Box, and was not legible from that distance.  (*Id.* ¶ 37.)

When Defendant Newby seized Plaintiff for trespassing, he asked Plaintiff if he had seen Circle K's "No Trespassing" sign.  (PSOF ¶ 28.)  Plaintiff stated that he had not seen Circle K's "No Trespassing" signs, that he had not been asked to leave, and that he would have been willing to leave the store's property if he had been asked.  (*Id.*)  Plaintiff was not able to continue recording freely and unencumbered because he was detained and handcuffed by Defendant Newby.  (*Id.* ¶ 30.)  Defendant Newby took possession of Plaintiff's video camera until he sat Plaintiff on the curb and placed Plaintiff's recording device in Plaintiff's lap before turning Plaintiff's video camera off. (*Id.*)  Defendant Adams spoke with Plaintiff, and Plaintiff informed Defendants Adams and Destefino that he was being unlawfully detained because he had not violated any laws, and that he was willing to identify himself under the threat of going to jail, if that was what was required.  (*Id.* ¶ 31.)  Plaintiff also informed Defendant Newby that he was willing to identify himself to avoid being placed in jail.  (*Id.*)

In his Sur-Reply, Plaintiff purports to add facts regarding the City of Mesa's Trespass Enforcement Program.  (Doc. 110 at 2.)  Plaintiff asserts the TEP was created specifically for businesses to help with incidents of trespassing and loitering during non-

---

[2] *See* https://ecourt.mesaaz.gov/DispositionReport?cn=2021063632&ds=Cms (last accessed July 30, 2024).

[3] *See id.*

business hours and mandates that "no trespassing signs," with the ARS code printed on them, be posted in highly visible locations on the property. (*Id.*) According to Plaintiff, under the TEP, if a business is open, a police officer must contact someone at the business to verify that an individual is not a customer or otherwise allowed to be on the property before making an arrest for trespassing. (*Id.*)

**IV.    Claims Regarding Arrest (Counts Two and Four)**

      **A.    Defendant Clark**

As an initial matter, the Court addresses Plaintiff's claims against Defendant Clark. It is undisputed that Defendant Clark, who investigating other individuals on Circle K's property on the opposite side (north facing side) of the Circle K store, had no contact with Plaintiff on the night of the incident. There is no evidence that Defendant Clark was personally involved in stopping or arresting Plaintiff, and Plaintiff does not address Defendants' arguments that Plaintiff cannot prevail on a § 1983 claim against Defendant Clark. The Court will therefore grant Defendants' Motion for Summary Judgment as to Defendant Clark.

      **B.    Initial Stop**

            **1.    Legal Standards**

Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct a brief, investigative stop of an individual when they have reasonable suspicion that the "person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Reasonable suspicion requires more than "inchoate and unparticularized suspicion or [a] hunch"; the officer must have "some minimal level of objective justification" for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal citations omitted). This level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.*; *United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985) ("The 'reasonable suspicion' standard . . . effects a needed balance between private and public interests when law enforcement officials must make a limited intrusion on less than probable cause.").

The Court must examine the "totality of the circumstances" to determine whether a detaining officer has a "particularized and objective basis" for suspecting criminal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "All relevant factors must be considered in the reasonable suspicion calculus—even those factors that, in a different context, might be entirely innocuous." *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003); *see United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006) ("Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity.").

During a *Terry* stop motivated by reasonable suspicion, the officer may ask investigatory questions, but the "scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500 (1983). "[I]t is well established that an officer may ask a suspect to identify himself during a *Terry* stop." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 178 (2004).

### 2.     Analysis

In his Response, Plaintiff does not address whether Defendants had reasonable suspicion to stop him. It is undisputed that Defendant Newby was investigating possible criminal trespass in the third degree, in violation of Arizona Revised Statutes, § 13-1502. Section 13-1502 provides, "A person commits criminal trespass in the third degree by: Knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry." Ariz. Rev. Stat. § 13-1502. "Enter or remain unlawfully" means "an act of a person who enters or remains on premises when the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged . . .." Ariz. Rev. Stat. § 13-1501(2). "Knowingly" means "with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission." Ariz. Rev. Stat. § 13-105(10)(b); *see State v. Malloy*, 639 P.2d 315, 320 (Ariz.

1981) (stating that prosecution must prove not only that the defendant knowingly, voluntarily, entered or remained, but it must also prove that the defendant was aware that his entry or remaining was unlawful); *State v. Kozan*, 706 P.2d 753, 755 (Ariz. Ct. App. 1985) (noting the defendant's awareness that entry or remaining was unlawful is a distinct element from "knowingly" entering or remaining).

There is no evidence that any law enforcement or other person having control over the Circle K property asked Plaintiff to leave to the property. Therefore, the question is whether Defendants had reasonable suspicion to believe that Plaintiff knowingly entered or remained unlawfully on the property despite having reasonable notice prohibiting entry. Assuming the truth of Plaintiff's facts, he could not and did not see the "No Trespassing" sign on the Circle K wall before he entered the parking lot.

According to Plaintiff's facts, Security Officer Dreschler agreed with Defendant Newby that Plaintiff, along with the other individuals who were filming the officers, was not acting like a Circle K customer and told Defendant Newby that he could "trespass" Plaintiff if Defendant Newby "want[ed] to." (PCSOF ¶ 7.) It is irrelevant for Fourth Amendment purposes that Plaintiff did not or could not see the "No Trespassing" sign; Defendants could not have known when they stopped Plaintiff that he could not see the sign, and the sign gave the public reasonable notice that trespassing on the property was prohibited. In addition, Defendants could lawfully ask Plaintiff to identify himself, which Plaintiff declined to do until he could speak to a supervisor. On these facts, Defendants had reasonable suspicion to believe Plaintiff was trespassing on the Circle K property, and their initial stop of Plaintiff did not violate the Fourth Amendment. There is no genuine dispute of material fact regarding whether Defendants had reasonable suspicion to stop Plaintiff.

### C.    Probable Cause for Arrest/False Arrest

#### 1.    Legal Standards

The Fourth Amendment requires an arrest to be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "'A police officer may make a

1    warrantless arrest when the 'officer has probable cause to believe that the person to be
2    arrested has committed a felony, whether or not a felony, in fact, has been committed.'"
3    *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (quoting *Peng v. Mei*
4    *Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003)).  To determine whether an officer had
5    probable cause for an arrest, the Court "'examine[s] the events leading up to the arrest, and
6    then decide[s] whether these historical facts, viewed from the standpoint of an objectively
7    reasonable police officer, amount to probable cause.'"  *O'Doan v. Sanford*, 991 F.3d 1027,
8    1039 (9th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018); *see*
9    *also Blankenhorn*, 485 F.3d at 471 ("The test for whether probable cause exists is whether
10   at the moment of arrest the facts and circumstances within the knowledge of the arresting
11   officers and of which they had reasonably trustworthy information were sufficient to
12   warrant a prudent [person] in believing that the petitioner had committed or was
13   committing an offense.'") (quoting *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir.
14   2005), *cert. denied*, 574 U.S. 1056 (2006)).

15   "Probable cause is 'a fluid concept' that 'deals with probabilities and depends on
16   the totality of the circumstances,' which cannot 'readily, or even usefully, [be] reduced to
17   a neat set of legal rules.'"  *O'Doan*, 991 F.3d at 1039 (quoting *Wesby*, 583 U.S. at 57).   It
18   "requires only a probability or substantial chance of criminal activity, not an actual
19   showing of such activity."  *Wesby*, 583 U.S. at 57 (quoting *Illinois v. Gates*, 462 U.S. 213,
20   243–44 n.13 (1983)).  This is not a high bar.  *Id.* (quoting *Kaley v. United States*, 571 U.S.
21   320, 338 (2014)) (quotation marks omitted).   "Probable cause exists when, under the
22   totality of the circumstances known to the arresting officers (or within the knowledge of
23   the other officers at the scene), a prudent person would believe the suspect had committed
24   a crime."  *Dubner v. City & County of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001)
25   (citation omitted).

26   "Because probable cause must be evaluated from the perspective of 'prudent
27   [people], not legal technicians,' an officer need not have probable cause for every element
28   of the offense."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) (quoting

*Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)).  But "'when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Id.* (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)) (citations omitted); *see State v. Malloy*, 639 P.2d 315, 320 (Ariz. 1981) (to convict a defendant of criminal trespass, the state must prove that the defendant understood the illegality of his entry or remaining).

"False arrest, a species of false imprisonment, is the detention of a person without his consent and without lawful authority." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1064 (D. Ariz. 2012) (quoting *Reams v. City of Tucson*, 701 P.2d 598, 601 (Ariz. Ct. App. 1985)), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).  Under Arizona law, false imprisonment and false arrest consist of non-consensual detention of a person "without lawful authority."  *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (emphasis in original).  To prevail on a § 1983 claim for false arrest, Plaintiff must show that Defendants made the arrest without probable cause or other justification.  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013).

### 2.    Analysis

The Court first addresses Plaintiff's new arguments in his Sur-Reply regarding the TEP.  Plaintiff argues that the TEP provides that "No Trespassing" signs are only applicable during a store's non-business hours and if the business is open to the general public, an inquiry must be made as to whether an individual is a customer of the business or not "before trespassing could apply." (Doc. 110 at 2.)  This argument is meritless.  The Mesa Trespassing Enforcement Program is not a law.  Rather, as Plaintiff notes, it was created to assist businesses with incidents of trespassing and loitering that occur when businesses are closed.[4]  The program allows business owners to register their property and

---

[4]  *See*  https://www.mesaazpolice.gov/crime-safety/trespass-enforcement-program

permits officers to "trespass an individual from [the] property, who does not have a legitimate reason to be there when the business is closed, without contacting the business owner or property manager first."  The program does not limit the applicability of Arizona Revised Statutes § 13-1502 to when businesses are closed.

In their Motion for Summary Judgment, Defendants argue Defendant Newby had probable cause to arrest Plaintiff.  Defendants provide a Declaration of Defendant Newby, in which Newby avers that he could easily read the "No Trespassing" sign when he faced the unobstructed wall, as Plaintiff was.  (Decl. of Kyler Newby, Doc. 82-1 at 6 ¶ 26.) Defendant Newby declares that he told Plaintiff and another individual, "Hey, go ahead and sit down for us, guys.  You're lawfully detained.  You're being trespassed.  Go ahead and sit down."  (*Id.* ¶ 28.)  Defendant Newby avers that based on his training and experience, he believed he had probable cause to charge Plaintiff with criminal trespass in the third degree based on his arrival at the Circle K before any individuals gathered on the sidewalks; Security Officer Dreschler's "subsequent determination that the non-customers filming in the parking lot were trespassers"; the "reasonable notice prohibiting trespassers from entry onto the property by means of the clearly posted and legible" "No Trespassing" signs; and Plaintiff's proximity to the unobstructed "No Trespassing" sign.  (*Id.* ¶¶ 32-33.) Defendant Newby further avers that he believed Plaintiff "knowingly entered the Circle K property as a trespasser despite the above-referenced reasonable notice provided" and that because he walked onto the property at the same approximate time as other individuals, he believed they were all coordinating their efforts together, and that they likely got that close and onto Circle K's private property because they knew that one or more of their associates was currently being investigated for trespassing."  (*Id.* ¶ 34.)

In his Response, Plaintiff contends Defendant Newby arrested him without probable cause because Newby "understood" that Plaintiff did not see Circle K's "No Trespassing" signs and that Plaintiff "was not provided a reasonable request to leave" before Newby placed Plaintiff under arrest.  (Doc. 97 at 6.)  Plaintiff contends he entered the Circle K

(last visited July 26, 2024).

property during business hours and "was not looking for" a "No Trespassing" sign because he "believed he had [a] First Amendment [right] to film police activity in the general public." (*Id.* at 7.)  Plaintiff asserts that when he told Defendant Newby that he had not seen the "No Trespassing" sign, that he had not been asked to leave the property, and that he was willing to leave the property, Defendant Newby "understood . . . that he no longer possessed reasonable suspicion or probable cause to arrest Plaintiff" for criminal trespass. (*Id.*)

Assuming the truth of Plaintiff's facts, Plaintiff did not and could not see the "No Trespassing" sign on the Circle K wall and did not believe he was trespassing.  After Plaintiff was detained, Defendant Newby asked Plaintiff if he had seen Circle K's "No Trespassing" sign.  Plaintiff told Defendant Newby that he had not seen the "No Trespassing" sign, that he had not been asked to leave, and that he was willing to leave the store's property if he had been asked.  On these facts, a reasonable jury could conclude that Defendant Newby did not have sufficient knowledge or information that would lead a prudent person to believe that Plaintiff had *knowingly* entered or remained on the Circle K property despite having reasonable notice that his entry or remaining there was prohibited.

There are genuine disputes of material fact regarding whether Defendant Newby had probable cause to arrest Plaintiff.  The Court will therefore consider whether Defendant Newby is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment and false arrest claims.

### D.    Qualified Immunity

#### 1.    Legal Standards

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-

1    32, 235-36 (2009).

2         Whether a right was clearly established must be determined "in light of the specific

3    context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201

4    (2001).  The plaintiff has the burden to show that the right was clearly established at the

5    time of the alleged violation.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero

6    v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).  "[T]he contours of the right must be

7    sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable

8    official would understand that what he is doing violates that right;" and "in the light of pre-

9    existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361

10   (9th Cir. 1994) (quotations omitted).  Regardless of whether the constitutional violation

11   occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly

12   established" or the officer could have reasonably believed that his particular conduct was

13   lawful.  *Romero*, 931 F.2d at 627.

14                    **2.      Parties' Arguments**

15        Defendants argue that Defendant Newby is entitled to qualified immunity because

16   "no published opinion from the Supreme Court or the Ninth Circuit has held that conduct

17   similar to that of Defendants was violative of Plaintiff's stated Fourth Amendment rights

18   under the objectively reasonable standard and based on circumstances closely analogous

19   to this case." (Doc. 77 at 11.)  Defendants contend that "[e]ven if a plaintiff is arrested in

20   the absence of probable cause, an officer is still immune from an unlawful-arrest claim if

21   it was *reasonably arguable* that there was probable cause for arrest." (*Id.* at 12) (quotation

22   marks and citation omitted).  In other words, Defendants assert, an "officer is entitled to

23   qualified immunity on an unlawful-arrest claim if a reasonable officer *could have believed*

24   that probable cause was present." (*Id.*) (quotation marks and citation omitted).

25        In his Response, Plaintiff argues at length that this Court should abandon the

26   qualified immunity doctrine.  (Doc. 97 at 9-19.)  Plaintiff also asserts that Defendant

27   Newby is not entitled to qualified immunity because the laws that Newby violated are

28   clearly established. (*Id.* at 19.)  That is, Plaintiff contends that because Defendant Newby

1    violated Plaintiff's Fourth Amendment rights, and his Fourth Amendment rights were
2    clearly established at the time, Defendant Newby is not entitled to qualified immunity.

3              **3.      Analysis**

4              The Court rejects out of hand Plaintiff's argument that the Court should disregard
5    the qualified immunity doctrine.  Neither the Supreme Court nor the Ninth Circuit has
6    overturned decades of qualified immunity jurisprudence on the grounds Plaintiff asserts.

7              Plaintiff fails to substantively respond to Defendants' arguments regarding qualified
8    immunity and misunderstands the qualified immunity test.  As discussed above, whether
9    Defendant Newby violated Plaintiff's Fourth Amendment rights is only the first part of the
10   test.

11             The Ninth Circuit has held that "qualified immunity applies when it was objectively
12   reasonable for an officer to believe he or she had probable cause to make the arrest." *Hill*
13   *v. City of Fountain Valley*, 70 F.4th 507, 516 (9th Cir. 2023) (citing *Rosenbaum v. Washoe*
14   *County*, 663 F.3d 1071, 1076 (9th Cir. 2011). "Framing the reasonableness question
15   somewhat differently, the question in determining whether qualified immunity applies is
16   whether all reasonable officers would agree that there was no probable cause in this
17   instance." *Rosenbaum*, 663 F.3d at 1078 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741,
18   (2011)).

19             Here, even if Defendant Newby did not have probable cause to arrest Plaintiff, "not
20   all reasonable police officers would believe that they lacked probable cause to make the
21   arrest." *Hill*, 70 F.4th at 516.  If Defendant Newby reasonably but mistakenly believed
22   Plaintiff knew he was trespassing, then based on the totality of the circumstances, Newby
23   acted reasonably by arresting Plaintiff.  *See Hill v. California*, 401 U.S. 797, 804 (1971)
24   (finding that officers acted reasonably based on the totality of the circumstances, including
25   a good-faith, but ultimately mistaken, belief that they were arresting the correct suspect).
26   In short, qualified immunity applies because Plaintiff has not offered any factually
27   analogous case "clearly establishing" that Defendant Newby's actions were unlawful under
28   these circumstances.  *Hill*, 70 F.4th at 717.  The Court concludes that Defendant Newby is

1    entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim.

2        For the foregoing reasons, the Court will grant Defendants' Motion for Summary

3    Judgment as to Plaintiff's Fourth Amendment and false arrest claims.

4    **V.    *Monell* Claim**

5        Section 1983 imposes liability on any "person" who violates an individual's federal

6    rights while acting under color of state law.  Congress intended municipalities and other

7    local government units to be included among those persons to whom § 1983 applies.

8    *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 689-90 (1978).  However, "a municipality

9    may not be sued under § 1983 solely because an injury was inflicted by its employees or

10   agents."  *Long v. County of L.A.,* 442 F.3d 1178, 1185 (9th Cir. 2006).  The actions of

11   individuals may support municipal liability only if the employees were acting pursuant to

12   an official policy or custom of the municipality.  *Botello v. Gammick*, 413 F.3d 971, 978-

13   79 (9th Cir. 2005).

14       In the First Amended Complaint, Plaintiff alleges that Mesa Police Department

15   Policy (DPM) 2.4.10(3)(D) is unlawful because the state statutes it "cites for its authorities"

16   "allow exceptions to due process of law regarding arrest without a warrant."  (FAC ¶¶ 47,

17   49.)  Plaintiff asserts Arizona Revised Statutes sections 13-3883 and 13-3903 "are void ab

18   initio because they allow for arrest for misdemeanors and violations, and also release for

19   these violations."  (*Id.* ¶ 52.)  Plaintiff claims section 13-3903 is also void "because it

20   allows executive officers to arrest and release, and take property (fingerprints and images

21   of [the] arrestee) in violation of due process, in accordance with the '[n]o takings clause'

22   under the Fourteenth Amendment."  (*Id.* ¶ 54.)  Plaintiff contends the statutes "clearly

23   bypass the procedure for bringing the arrestee before a magistrate when arrested without a

24   warrant," which he asserts permits an "executive officer" to perform a "judicial function,"

25   in violation of the "distribution of powers clause" of the Arizona Constitution.  (*Id.* ¶ 55.)

26       In their Motion, Defendants argue Plaintiff's *Monell* claim fails for four reasons:

27   First, Defendants assert Plaintiff's *Monell* claim fails because he cannot prevail on a

28   constitutional claim against any individual Defendant.  (Doc. 77 at 14.)   Second,

Defendants contend Plaintiff was arrested for trespass in the third-degree, a misdemeanor, not for a violation of law less than a misdemeanor. (*Id.*) Third, Defendants argue Plaintiff was transported to Mesa's Holding Facility the night of his arrest and saw legal counsel and a judge the following day. (*Id.* at 14-15.) Fourth, Defendants assert Arizona Revised Statutes §§ 13-3883 and 13-3903 are not void. (*Id.* at 15.)

Plaintiff fails to address Defendants' arguments in his Response. Plaintiff has not presented any evidence that he suffered any injury *because of* DPM 2.4.10. The Court will therefore grant Defendants' Motion for Summary Judgment as to the *Monell* claim against the City of Mesa.

## VI.    First Amendment Retaliatory Arrest Claim (Count Three)

### A.    Legal Standard

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoting *Hartman*, 547 U.S. at 256.)

To prevail on a First Amendment retaliatory arrest claim, a plaintiff must first plead and prove the absence of probable cause. *Id.* at 401. "[I]f the plaintiff establishes the absence of probable cause, 'then ... [t]he plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation.'" *Id.* at 404; *see also id.* at 398 ("It is not enough to show that an official acted with a retaliatory motive and the plaintiff was injured – the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.").

. . . .

**B.     Analysis**

With respect to probable cause for Plaintiff's arrest, the Court has already determined there are genuine disputes of material fact regarding whether Defendant Newby had probable cause to arrest Plaintiff.  The second step of the retaliatory arrest inquiry requires Plaintiff to show that filming the police officers while they carried out their duties was a substantial or motivating factor behind his arrest.  In other words, Plaintiff must establish a "causal connection" between Defendant's "retaliatory animus" and Plaintiff's "subsequent injury."  *Id.* at 398 (quoting *Hartman*, 547 U.S. at 259).  The Supreme Court has recognized that retaliatory arrest cases "present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury" and that the "causal inquiry is complex because protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest."  *Id.* at 401 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)).  In *Hartman*, the Supreme Court observed that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."  547 U.S. at 260.

There is no evidence in the record that Defendants Clark, Destefino, and Adams expressed or demonstrated any kind of retaliatory animus toward Plaintiff because he was recording police officers.  The Court will therefore grant Defendants' Motion for Summary Judgment with respect to Plaintiff's First Amendment retaliatory arrest claim against Defendants Clark, Destefino, and Adams.

With respect to Defendant Newby, a reasonable jury could conclude that Newby exhibited retaliatory animus when he told Security Officer Dreschler that Plaintiff and the other individuals filming the police officers were "First Amendment auditors," not customers, which prompted Dreschler to tell Newby that Newby could "trespass" Plaintiff if Newby "wanted to."  On this record, there are genuine disputes of material fact regarding whether Plaintiff's First Amendment activity was a substantial or motivating factor behind his arrest.  The Court will therefore consider whether Defendant Newby is entitled to

1  qualified immunity with respect to Plaintiff's retaliatory arrest claim.

2         Defendants argue they are "entitled to qualified immunity because there was no

3  clearly established right for a person to continue recording while arrested and on private

4  property where the company posted 'No Trespassing' signs, where the person was not a

5  store customer, and where the store's Security Officer determined that the individual was

6  trespassing." (Doc. 77 at 13.)  Defendants mischaracterize the right at issue.  The right at

7  issue is the right to be free from arrest for engaging in First Amendment activity in

8  retaliation for engaging in that activity where there is no probable cause for the arrest.

9         It was clearly established in 2021 that in the absence of probable cause, a police

10  officer cannot arrest an individual who is engaging in First Amendment activity in

11  retaliation for engaging in that activity.  *See Nieves*, 587 U.S. at 398; *Hartman*, 547 U.S.

12  at 256.   The Court concludes Defendant Newby is not entitled to qualified immunity with

13  respect to Plaintiff's retaliatory arrest claim.  The Court will therefore deny Defendants'

14  Motion for Summary Judgment as to Plaintiff's First Amendment claim against Defendant

15  Newby.

16  **IT IS ORDERED:**

17         (1)      The reference to the Magistrate Judge is **withdrawn** as to Defendants'

18  Motion for Summary Judgment (Doc. 77).

19         (2)      Defendants' Motion for Summary Judgment (Doc. 77) is **granted** in part and

20  **denied** in part.  The Motion is **denied** as to Plaintiff's First Amendment retaliatory arrest

21  claim in Count Three against Defendant Newby.  In all other respects, the Motion is

22  **granted**.

23         (3)      Counts Two, Four, and Eight are **dismissed with prejudice**.

24         (4)      Defendants City of Mesa, Clark, Destefino, and Adams are **dismissed with**

25  **prejudice**.

26         (5)      The remaining claim is the First Amendment retaliatory arrest claim in Count

27  Three against Defendant Newby.

28

(6)     This action is referred by random lot to Magistrate Judge Morrissey for the purpose of conducting a settlement conference.

(7)     Defendants' counsel must arrange for all parties to jointly contact the chambers of Magistrate Judge Morrissey at 602-322-7680 within 14 days of the date of this Order to schedule a settlement conference.

Dated this 15th day of August, 2024.

James A. Teilborg
Senior United States District Judge